UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FRANK CORSINI, LIBERTY-CITIC
ENERGY CAYMAN LTD., and LIBERTY
ECO ENERGY LLC,

                           Plaintiffs,

          v.                                                    1:24-CV-03196-LTS

DENTONS US LLP, EDWARD J. REICH,
JAMES M. COSTAN, JEFFREY S. GERON,
BOIES SCHILLER FLEXNER LLP,
CHRISTOPHER GREEN, IAN DUMAIN,
and WILLIAM OHLEMEYER,

                           Defendants.

---

## MEMORANDUM ORDER

Plaintiffs Frank Corsini, Liberty-CITIC Energy Cayman Ltd. ("Liberty-CITIC"),

and Liberty ECO Energy LLC ("Liberty," and together with Liberty-CITIC, the "Liberty

Parties") bring this action against Defendants Dentons US LLP ("Dentons"), Edward J. Reich,

Jeffrey S. Geron (collectively, Dentons, Reich, and Geron, the "Dentons Defendants"), Boies

Schiller Flexner LLP ("Boies Schiller"), James M. Costan, Christopher Green, Ian Dumain, and

William Ohlemeyer.  On October 18, 2024, Defendants James M. Costan, Christopher Green,

Ian Dumain, and William Ohlemeyer were dismissed pursuant to Federal Rule of Civil

Procedure 4(m) because of Plaintiffs' failure to timely enact service on defendants without good

cause.  (Docket entry no. 48.)  Only the Dentons Defendants and Boies Schiller remain.

Plaintiffs bring six counts against each remaining Defendant—violation of the

Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. section 1962(c),

conspiracy to violate RICO under 18 U.S.C. section 1962(d), common law fraud, violation of

New York Judiciary Law section 487, civil conspiracy, and unjust enrichment.  (Docket entry no. 1 ("Compl.") ¶¶ 119-80.)  The Court has subject matter jurisdiction under 28 U.S.C. sections 1331 and 1332(a), as well as 18 U.S.C. section 1964(c).

Before the Court are the Dentons Defendants' and Boies Schiller's motions to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (Docket entry nos. 50, 54.)  The Court has considered carefully the parties' submissions.  (Docket entry no. 51 ("Boies Schiller Mem."); docket entry no. 56 ("Dentons Mem."); docket entry no. 60 ("Pls. Mem"); docket entry no. 63 ("Boies Schiller Reply"); docket entry no. 64 ("Dentons Reply").)  For the reasons set forth below, both the Dentons Defendants' and Boies Schiller's motions to dismiss are granted, and the Complaint is dismissed with prejudice.

BACKGROUND[1]

For purposes of this motion practice, the Court accepts all well-pleaded allegations in the Complaint (docket entry no. 1) as true and draws all reasonable inferences in Plaintiffs' favor.  The Court also considers those materials relied on and incorporated by the Complaint.  See Fed. R. Civ. P. 10(c); Broder v. Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005).

The Power Purchase Agreement

On May 16, 2012, the Liberty Parties retained Dentons in connection with their plan to improve the delivery and distribution of power in Senegal.  (Compl. ¶ 20.)  The Dentons deal team included, among others, Defendants James Costan and Jeffrey Geron.  (Id. ¶ 25.)  The principal transaction document was a power purchase agreement (the "PPA"), which was

---

[1]        Pincites to materials filed on ECF refer to ECF-designated pages.

negotiated between the Liberty Parties and the Société Nationale D'Eléctricité du Sénégal ("SENELEC"), which was the state-owned power supply company for Senegal.  (Id. ¶¶ 21-25.)

Negotiations on the PPA continued through October 2012.  (Id. ¶¶ 29-32.)  On October 24, 2012, French and English versions of the PPA were executed by the Liberty Parties (by Corsini) and SENELEC (by Papa Dieng).  (Id. ¶ 32.)  However, while SENELEC executed the PPA, the Board of Directors of SENELEC never approved the PPA.  (Id. ¶ 36.)

Plaintiffs claim that they "were led to believe by the Dentons defendants that the PPA was in full force and effect and valid as of the date of the signing [October 24, 2012]," when, in actuality, the PPA was not valid.  (Id. ¶ 34.)  According to Plaintiffs, the Dentons Defendants knew or should have known that the validity of the PPA was contingent on obtaining the post-execution approval of SENELEC's Board of Directors, which was never obtained. (Id. ¶¶ 35-36.)  Plaintiffs aver that "Dentons completely failed to advise Mr. Corsini or the other plaintiffs that the PPA could never be effective – and indeed was never effective – in the absence of express approval by the SENELEC Board of Directors."  (Id. ¶ 37.)  Nonetheless, despite their allegations that they were misled about the role of SENELEC's Board with respect to the validity of the PPA, Plaintiffs allege that "[t]he PPA itself contained a notation to that effect [i.e., that post-execution Board approval was required] which plaintiffs confirmed after consultation with Dentons before the PPA was signed by Mr. Dieng [for SENELEC] and Mr. Corsini [for Plaintiffs]."  (Id. ¶ 35.)

On November 27, 2013, Dentons terminated its representation of the Liberty Parties due to their failure to pay approximately $1.9 million in legal fees.  (Id. ¶¶ 54, 112.) Plaintiffs describe Dentons's withdrawal and demand for payment as part of the firm's "overall corrupt scheme to harm" Plaintiffs and "merely a stage in an elaborate scheme by Dentons, and

later joined by Boies Schiller, to steal money from Mr. Corsini, Liberty ECO and

Liberty-CITIC." (Id. ¶¶ 54-55.)

The Engagement Agreement and the Cooperation Agreement

Several years later, in September 2015, the Liberty Parties retained Defendant

Boies Schiller to commence arbitration proceedings against SENELEC and Senegal in an

attempt to enforce the PPA. (Id. ¶ 56.) Boies Schiller's engagement was memorialized in a

September 17, 2015 Engagement Letter (docket entry no. 52-1), a February 1, 2016 Updated

Engagement Letter (docket entry no. 52-2), and a July 18, 2016 Second Updated Engagement

Letter (docket entry no. 52-3). (Compl. ¶¶ 56, 61, 67.) Each of these engagement letters was

executed by Corsini, the Liberty Parties, and Boies Schiller. (Docket entry nos. 52-1, 52-2,

52-3.)

The Second Updated Engagement Letter (the "Engagement Agreement") set forth

Boies Schiller's contingency-based fee structure, which would entitle Boies Schiller to at least

40% of any award that was obtained. (Docket entry no. 52-3 at 3.) The agreement also

explained that Boies Schiller had entered into a "prepaid forward purchase agreement" with a

third-party litigation funder, CWBSF Electric LP, for litigation financing.[2] (Id.) The agreement

also set forth that the Liberty Parties owed Dentons approximately $1,900,000 in connection

with Denton's work on the PPA and that a term sheet attached thereto was being negotiated to

compensate Dentons, including by repaying the Liberty Parties' obligations to Dentons, in

exchange for Dentons' cooperation in the upcoming arbitration proceeding. (Id. at 4-5.)

---

[2]    The September 17, 2015 Engagement Letter provided that Boies Schiller's representation
was contingent on Boies Schiller securing funding from a third-party litigation funder.
(Compl. ¶ 65; docket entry no. 52-1 at 3.)

Specifically, the term sheet contemplated that Dentons would be paid $275,000 immediately, that the remaining amounts the Liberty Parties owed to Dentons would be paid from any recovery obtained in the arbitration, and that Dentons would be reimbursed for cooperation costs. (Id. at 16.)

On December 6, 2016, Boies Schiller, Dentons, and the Liberty Parties entered into a cooperation agreement, which memorialized the term sheet (the "Cooperation Agreement"). (Compl. ¶ 72; docket entry no. 52-4.) Under the Cooperation Agreement, Dentons agreed to cooperate with Boies Schiller and the Liberty Parties in the arbitration, including by: making Costan available as a testifying witness and permitting Boies "adequate access to Mr. Costan to prepare him to testify"; "mak[ing] available to [Boies Schiller] all then-current Dentons attorneys, consultants, experts or employees who participated in the [PPA]"; relinquishing its retaining lien on the Liberty Parties' files; and "provid[ing] other forms of reasonable cooperation to [Boies Schiller] in connection with the Litigation as [Boies Schiller] reasonably requests." (Docket entry no. 52-4 ¶ 1; Compl. ¶ 78.) In exchange, Dentons received $275,000 immediately, which was credited towards the total amount that the Liberty Parties owed; Dentons would be paid the remaining amount owed by the Liberty Parties, plus interest, from any recovery obtained in the arbitration; and Dentons would be reimbursed for its cooperation costs, such as the hourly rates of its personnel. (Compl. ¶ 78; docket entry no. 52-4 ¶ 2.) Dentons would be paid by the third-party litigation funder. (Compl. ¶ 59.) The Cooperation Agreement also contained a general release from the Liberty Parties in favor of "Dentons and its partners [and] employees" for "any and all disputes [and] claims" that the Liberty Parties "may have had in the past or may now have, as of the date of this Agreement, arising directly or indirectly out of, or relating directly or indirectly to, any omissions, acts or

event occurring in connection with the PPA, PPA-related Agreements and the Litigation [the arbitration]."  (Compl. ¶ 78; docket entry no. 52-4 ¶ 2(f).)

Plaintiffs allege that "Defendants Dentons and Boies Schiller continuously maintained that the PPA was valid and effective in order to induce plaintiffs to enter into" the Engagement Letters and the Cooperation Agreement.  (Compl. ¶ 76.)  According to Plaintiffs, "[b]ut for defendants' representations and assurances regarding the validity and enforceability of the PPA – all of which representations and assurances were deliberately and recklessly false – plaintiffs would never have agreed to the terms and conditions of the Boies Schiller engagement documents."  (Id. ¶ 71.)

Boies Schiller's Representation of Plaintiffs

Plaintiffs allege that, during Boies Schiller's representation of them, Boies Schiller engaged in fraudulent activities.  On January 2015, Liberty-CITIC was deregistered as a Cayman Island company, and on August 30, 2016, Boies Schiller paid for the reinstatement of Liberty-CITIC.  (Id. ¶ 114.)  As part of the reinstatement process, Boies Schiller required Corsini to submit an affidavit claiming that Liberty-CITIC had "ongoing business."  (Id.)  Plaintiffs do not explain how the affidavit was fraudulent or allege that the affidavit was false.  (See id.)

Plaintiffs also allege that Boies Schiller "consistently reassur[ed] plaintiffs that the October 2012 PPA was valid and enforceable" but that Boies Schiller knew otherwise—that the "PPA was not valid and effective."  (Id. ¶¶ 79-80.)  In support, Plaintiffs point to a Boies Schiller memo dated April 18, 2017, which addressed whether "SENELEC's failure under Article 9 and Section 3.2(b) of the PPA to obtain and deliver the Sovereign Guaranty operate as the failure of a condition precedent under Article 18(a) and thereby excuse SENELEC from

further performance under the PPA?"[3]  (<u>Id.</u> ¶ 79 (quoting docket entry no. 52-6).)  Plaintiffs, however, do not explain how the memo supports their allegation.  The memo answered the question posed "No," concluding that SENELEC "would be liable under New York law for breach of contract" and "the result should be the same under Senegal law."  (Docket entry no. 52-6 at 2, 5.)

<u>The Arbitration</u>

On June 15, 2017, Boies Schiller—on behalf of the Liberty Parties—commenced an arbitration proceeding against SENELEC and Senegal in the International Chamber of Commerce ("ICC") International Court of Arbitration.[4]  (Compl. ¶ 82.)  This arbitration occurred in Paris, France.  (Docket entry no. 66 at 143.)  Green, Dumain, and Ohlemeyer were part of the Boies Schiller litigation team.  (<u>Id.</u> ¶¶ 13-15, 127, 135.)  Plaintiffs allege that, during the course of litigation, Boies Schiller and Dentons "lie[d]" to them and "continued to reassure [them] that the PPA was enforceable" despite "presumptive knowledge . . . that the October 2012 PPA was not valid and effective."  (<u>Id.</u> ¶¶ 79, 80.)  Plaintiffs also allege that Boies Schiller "claim[ed] more than $250 million in damages . . . despite the fact that Boies Schiller never made an analysis or determination which would have revealed that no valid or enforceable PPA ever existed."  (<u>Id.</u> ¶ 70.)

---

[3]    The Sovereign Guaranty provided: "Within forty-five (45) Days after the date of this Agreement, Purchaser [<u>i.e.</u>, SENELEC] shall obtain from the Ministry of Finance of the Republic of Senegal and shall deliver to Seller [<u>i.e.</u>, Liberty-CITIC] a duly authorized and executed sovereign guaranty of the fully and punctual performance of Purchaser's [<u>i.e.</u>, SENELEC's] payment obligations hereunder, in substantially the form of Appendix J hereto ('Guaranty')."  (Docket entry no. 52-6 at 2.)

[4]    Bizarrely, Plaintiffs are now represented by two of the same attorneys (of the firm Lazareff Le Bars Eurl) who represented SENELEC and Senegal in the ICC arbitration. (<u>See</u> Pls. Mem. at 5 n.2.)

On October 10, 2018, the International Court of Arbitration directed the Liberty Parties to disclose the identities of any entities "providing financing . . . for" or "having a direct economic interest in" the arbitration.  (Id. ¶ 86.)  In response, Boies Schiller prepared a disclosure identifying CWBSF Electric LP and Dentons.  (Id. ¶ 87.)  On November 1, 2018, the International Court of Arbitration further directed the Liberty Parties to disclose "information on any individuals or entities behind CWBSF Electric LP."  (Id. ¶ 88.)  Boies Schiller prepared a response, stating that because it represented the Liberty Parties on contingency it "can potentially be considered to have a 'direct economic interest'" and that it "has a contractual relationship with CWBSF Electric LP, pursuant to which CWBSF Electric LP provides funding . . . in exchange for a portion of [Boies Schiller's] interest in the award to be rendered in this arbitration, if any."  (Id. ¶ 89.)  Boies Schiller also stated that neither it nor any of its partners or employees had any ownership stake or management role in CWBSF Electric LP.  (Id. ¶ 90.)  On November 6, 2018, the International Court of Arbitration ordered Boies Schiller directly (as opposed to the Liberty Parties) to provide information on the individuals or entities behind CWBSF Electric LP.  (Id. ¶ 91.)  Boies Schiller responded that the general partner of CWBSF Electric LP was Commonwealth Opportunity Capital GP LLC and that the limited partners were CDK Associates, LLC, SENELEC Funding LLP, Commonwealth Opportunity Platform LLC, Peter and Kerri Superannuation Fund, CWOC Cayman LP, and the Karathanasis Firm PLLC.  (Id. ¶ 92.)

In reference to these disclosures, Plaintiffs claim that "Boies Schiller knowingly and intentionally did not disclose to the Tribunal the existence and use of funding at the commencement of the ICC Arbitration nor did it disclose that such funding was on the basis of a 'prepaid forward purchase agreement.'"  (Id. ¶ 93.)  Plaintiffs also claim that "Boies Schiller did

not disclose the December 2016 [Cooperation] Agreement with defendant Dentons or the conditions related to such funding and the relationship to the prepaid forward purchase agreement which was required pursuant to the [International Court of Arbitration's orders]."  (Id. ¶ 94.)

The arbitration hearing commenced on April 29, 2019.  (Id. ¶ 95.)  After the conclusion of the first day, Ian Dumain, a Boies Schiller attorney, allegedly accosted Corsini, telling Corsini to testify falsely in accordance with his instructions or else "get on a plane back home."  (Id. ¶¶ 99-100.)  "Placed in fear by [Dumain's] conduct and statements," and "coupled with [Dumain's] threat to send [him] away," Corsini testified falsely in accordance with Dumain's instructions.  (Id. ¶ 101.)  During the hearing, Boies Schiller and Dentons also allegedly suborned perjury by Costan, "who knew that no valid PPA ever existed[.]"  (Id. ¶ 102.)  Finally, Plaintiffs allege that, earlier in the litigation, on May 1, 2018, Boies Schiller and Dentons submitted "materially false and misleading" witness statements for Corsini and Costan. (Id. ¶ 85.)

On May 4, 2020, the International Court of Arbitration ruled against the Liberty Parties, holding that the "October 2012 PPA is not a binding contract and that respondent [SENELEC] did not breach[.]"  (Id. ¶ 103.)  The International Court of Arbitration also imposed on the Liberty Parties the "costs of the arbitration fixed by the court at USD 1,220,000."  (Id. ¶ 104.)  There is no allegation, however, that Plaintiffs themselves paid these costs.[5]

_____

[5]     Under the Second Updated Engagement Letter, the Liberty Parties were not responsible for these costs.  (Docket entry no. 52-3 at 2 (providing that "[t]he Client will not have any obligation either to advance costs, or, except as noted in the sentence immediately above [which provides that '[a]ny out of pocket costs advanced by the Firm for the Litigation will be reimbursed first out of "Client's Recovery"'], to reimburse the Firm for the costs that the Firm may have advanced on the Client's behalf").).

<u>DISCUSSION</u>

Plaintiffs bring six counts against each Defendant—violation of RICO under 18 U.S.C. section 1962(c), conspiracy to violate RICO under 18 U.S.C. section 1962(d), common law fraud, violation of New York Judiciary Law section 487, civil conspiracy, and unjust enrichment.  The Dentons Defendants move to dismiss all counts under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Separately, Boies Schiller moves to dismiss all counts under Rule 12(b)(6) for failure to state a claim.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; there must be factual content pleaded that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  The Court accepts as true the nonconclusory factual allegations in the Complaint and draws all reasonable inferences in the plaintiff's favor.  <u>Roth v. Jennings</u>, 489 F.3d 499, 501 (2d Cir. 2007).  Furthermore, where a plaintiff brings a claim "premised on allegations of fraud," <u>In re Ford Fusion & C-Max Fuel Econ. Litig.</u>, No. 13-MD-2450-KMK, 2015 WL 7018369, at *12 (S.D.N.Y. Nov. 12, 2015), she must satisfy the heightened pleading standards of Rule 9(b), which require her to "state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent," <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1176 (2d Cir. 1993).

None of Plaintiffs' claims meet these standards, and the Complaint is dismissed with prejudice.  The Court addresses each claim in turn.

<u>Plaintiffs Are Barred from Bringing Claims Against the Dentons Defendants for Actions Pre-Dating the Cooperation Agreement</u>

As a threshold matter, to the extent Plaintiffs bring claims arising out of the Dentons Defendants' actions that occurred prior to the execution of the December 6, 2016 Cooperation Agreement, those claims fail because Plaintiffs, in the Cooperation Agreement, "fully and forever release[d] and discharge[d]" the Dentons Defendants "from any and all disputes, claims . . . of any kind whatsoever that [Plaintiffs] may have had in the past or may now have, as of the date of this Agreement, arising directly or indirectly out of, or relating directly or indirectly to, any omissions, acts, or events occurring in connection with the PPA, PPA-related Agreements and the Litigation [<u>i.e.</u>, arbitration]."  (Docket entry no, 52-4 ¶ 2(f); <u>see also</u> Compl. ¶ 78(m).)  In their opposition papers, Plaintiffs claim that they were "illicit[ly]" and fraudulently induced into signing the Cooperation Agreement, but they proffer nothing beyond conclusory assertions to support this allegation.  (<u>E.g.</u>, Compl ¶¶ 60, 63, 71); <u>see infra</u> p. 15. (finding Plaintiffs' allegations that they were induced to enter the Cooperation Agreement as a result of Defendants' lies about the validity of the PPA to be insufficient under Rule 9(b), as well as facially implausible).

<u>Counts One and Two: 18 U.S.C. Sections 1962(c) and 1962(d) (RICO)</u>

In Counts One and Two, Plaintiffs assert causes of action for a RICO violation under section 1962(c), as well as conspiracy to violate RICO under section 1962(d).  "To establish a RICO claim, a plaintiff must show: (1) a violation of [] 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962."  <u>Kim v. Kimm</u>, 884 F.3d 98, 103 (2d Cir. 2018) (quoting <u>Cruz v. FXDirectDealer, LLC</u>, 720 F.3d 115, 120 (2d Cir. 2013)).  "To establish [] a violation [of section 1962], a plaintiff must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  <u>Id.</u>

(quoting <u>DeFalco v. Bernas</u>, 244 F.3d 286, 306 (2d Cir. 2001)).  In turn, "racketeering activity" is defined as enumerated types of state and federal crimes.  18 U.S.C. § 1961(1).

      To establish "racketeering activity," Plaintiffs allege a laundry list of violations of federal criminal law[6] and state criminal law.[7]  Despite their abundance, though, none of Plaintiffs' allegations are sufficiently pleaded to support a RICO claim.  While Plaintiffs allege a multitude of criminal violations, their claims suffer from an equally large number of flaws.  Accordingly, Plaintiffs' RICO claims must be dismissed.  Specific allegations are discussed below.

      <u>Obstruction of Justice (18 U.S.C. § 1503), Perjury (18 U.S.C. § 1623(a)), Witness Tampering (18 U.S.C. § 1512), and Deceit on the Court (N.Y. Judiciary Law § 487)</u>

      Plaintiffs allege that Defendants committed obstruction of justice, perjury, witness tampering, and deceit on the court by submitting false evidence and suborning perjury during the arbitration.  (Compl. ¶¶ 131-37, 151.)  These allegations are insufficient to support a RICO claim.

      First, "allegations of frivolous, fraudulent, or baseless litigation activities— without more—cannot constitute a RICO predicate act."  <u>Kim</u>, 884 F.3d at 104 (holding that allegations of obstruction of justice, mail fraud, and wire fraud through submissions of false declarations to the court were not "racketeering activities").  Because Plaintiffs do not allege anything "more" than fraud, they fail to allege "racketeering activity."  <u>Cf. Azima v. Decehert</u>

---

[6]    Namely, 18 U.S.C. sections 1503 (obstruction of justice), 1512 (witness tampering), 1341 (mail fraud), 1343 (wire fraud), 1623(a) (perjury), and 1956(a)(2)(A) (money laundering).

[7]    Namely, New York Penal Law sections 155.05(2)(e) (extortion) and New York Judiciary Law section 487 (deceit on the court).

LLP, No. 22-CV-8728-PGG-JEW, 2024 WL 4665106, at *20 (S.D.N.Y. Sept. 26, 2024) ("[W]henever a Court has determined that allegations cleared the Kimm bar, the litigation activity featured either (1) a mass scheme, (2) corruption of the decision-makers in the court proceedings, or (3) the fraudulent securing of default judgments.").

Second, Plaintiffs fail to satisfy the heightened pleading standards of Rule 9(b), which require Plaintiffs to "state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent." Mills, 12 F.3d at 1176. Plaintiffs do not identify the allegedly false and misleading statements or testimony submitted to the International Court of Arbitration. (See Compl. ¶¶ 84-94, 99-102.)

Finally, Plaintiffs do not allege misconduct in a domestic court, as is required under the applicable statutes. O'Malley v. New York City Transit Auth., 896 F.2d 704, 707 (2d Cir. 1990) ("To constitute an offense under this statute [obstruction of justice, 18 U.S.C. section 1503], the act must relate to a proceeding in a federal court of the United States."); Doscher v. Mannatt, Phelps & Phillips, LLP, 48 N.Y.S.3d 593, 593 (App. Div., 1st Dep't 2017) ("[T]he statute [New York Judiciary law section 487] does not apply to conduct outside New York's territorial borders."); 18 U.S.C. §§ 1512 (limiting section 1512 to "official proceeding[s]," which are limited to United States federal courts, as defined by 18 U.S.C. § 1512(a)(1)(A)); 18 U.S.C. § 1623(a) (limiting statute to "any proceeding before or ancillary to any court or grand jury of

the United States").  Because the complained-of conduct here occurred in the International Court of Arbitration,[8] Plaintiffs fail to plead an actionable violation.[9]

<u>Mail Fraud (18 U.S.C. § 1341) and Wire Fraud (18 U.S.C § 1343)</u>

To state a viable claim of mail fraud or wire fraud, Plaintiffs must plead "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme."  <u>Fountain v. United States</u>, 357 F.3d 250, 255 (2d Cir. 2004) (quoting <u>United States v. Dinome</u>, 86 F.3d 277, 283 (2d Cir. 1996)).  Plaintiffs fail to plead a plausible claim for a number of reasons.

First, Plaintiffs claim that Defendants submitted false evidence and suborned perjury during the arbitration.  (Compl. ¶¶ 144-48.)  This claim, however, is barred by <u>Kim</u>.  884 F.3d at 104 ("[A]llegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act."); <u>see also</u> <u>FindTheBest.com, Inc. v. Lumen View Tech. LLC</u>, 20 F. Supp. 3d 451, 460 (S.D.N.Y. 2014) ("[C]ourts have consistently refused to recognize as wire or mail fraud even litigation activities that rise to the level of malicious prosecution simply because the mail or wires were used.").  Furthermore, Plaintiffs' allegations do not meet the pleading requirements of Rule 9(b) because Plaintiffs do not identify the

---

[8]    Plaintiffs also allege misconduct in "Senegalese courts," but the Complaint does not describe any proceedings in Senegal.  (<u>See</u>, <u>e.g.</u>, Compl. ¶¶ 127, 145, 149, 157, 169-70.) In any event, any such alleged misconduct is similarly not actionable under the referenced statutes.

[9]    Furthermore, a violation of N.Y. Judiciary Law section 487 cannot be "racketeering activity" because a violation of that statute is not punishable by more than one year of imprisonment.  N.Y. Judiciary Law § 487 (classifying crime as misdemeanor); N.Y. Penal Law § 70.15 (setting the maximum sentence for misdemeanors); 18 U.S.C. § 1961(1)(A) (to constitute "racketeering activity" state law crime must be "punishable by imprisonment for more than one year").

allegedly false and misleading statements or testimony submitted to the International Court of Arbitration.  (See Compl. ¶¶ 84-94, 99-102.)

Next, Plaintiffs claim that Defendants lied to them (as opposed to the International Court of Arbitration) about the validity about the PPA but allege insufficient facts to support their contention.[10]  Plaintiffs' conclusory assertions of deceit do not pass muster under Rule 9(b).  (E.g., Compl. ¶¶ 37, 71, 76, 80-81); see Mills, 12 F.3d at 1176.  And the only two allegations that are pleaded with any sort of particularity are facially implausible.  First, Plaintiffs allege that Dentons failed to advise them that following execution of the PPA, the Board of SENELEC had to approve the agreement.  (Id. ¶ 37.)  But, directly contradicting that allegation, Plaintiffs aver that "[t]he PPA itself contained a notation to that effect [i.e., that post-execution Board approval was required] which plaintiffs confirmed after consultation with Dentons before the PPA was signed by Mr. Dieng [for SENELEC] and Mr. Corsini [for Plaintiffs]."  (Id. ¶ 35 (emphasis added).)  Second, Plaintiffs claim that Boies Schiller prepared an April 18, 2017 memo that determined that the PPA was invalid.  (Id. ¶ 79 (citing docket entry no. 52-6).)  But that memo does not say any such thing.  (Id. at 2, 5.)  Instead, the memo concluded that SENELEC "would be liable under New York law for breach of contract," and "the result should be the same under Senegal law."  (Id.)

Even if Plaintiffs plausibly pleaded that Defendants lied about the validity of the PPA, Plaintiffs fail to allege any fraudulent scheme that interfered with their property rights.  Pasquantino v. United States, 544 U.S. 349, 355 (2005) ("[T]he object of the fraud [must be] money or property in the victim's hands." (citation omitted)).  Plaintiffs aver that they were

---

[10]    Plaintiffs also appear to allude to fraud in connection with the reinstatement of Liberty-CITIC, but they do not allege any specific facts in support.  (Compl. ¶ 114.)

induced by Defendants' deceit to enter into the Engagement Agreements and the Cooperation Agreement with Defendants. (Compl. ¶¶ 71, 76.) Those agreements, however, do not evince any fraudulent scheme to deprive Plaintiffs of their legitimate property interests. Under the contingency fee structure of the agreements, Defendants would receive a portion of Plaintiffs' recovery only in the event that they were successful in litigating the validity of the PPA. That is, Defendants stood to gain nothing from their purported deceit. Finally, to the extent Plaintiffs complain about the third-party litigation financing arrangement, Plaintiffs had no legitimate property interests in any monies paid by the litigation financing firm to either Dentons or Boies Schiller—that money was never Plaintiffs' money.

> Extortion (N.Y. Penal Law § 155.05(2)(e)

Under New York law, larceny by extortion is the "wrongful taking" of "property" of another "by means of instilling in him a fear" of certain enumerated consequences. N.Y. Penal Law § 155.05(2)(e); Printers II, Inc. v. Pros. Pub., Inc., 615 F. Supp. 767, 773 (S.D.N.Y. 1985), aff'd, 784 F.2d 141 (2d Cir. 1986). This claim fails because Plaintiffs do not allege that Defendants obtained Plaintiffs' money or property, much less that that Defendants obtained any such money or property through wrongful means. Indeed, Plaintiffs left their bill to Dentons unpaid, were represented by Boies Schiller on contingency, and did not pay the imposed costs of arbitration. (Compl. ¶¶ 54, 64, 104, 112; see also docket entry nos. 52-3, 52-4.)

> Money Laundering (18 U.S.C. § 1956(a)(2)(A))

To establish money laundering under 18 U.S.C. section 1956(a)(2)(A), Plaintiffs must show a "transfer[]" of funds "with the intent to promote the carrying on of specified unlawful activity." 18 U.S.C. § 1956(a)(2)(A); see 18 U.S.C. § 1956(c)(7) (defining "specified unlawful activity"). The only transfer of funds identified by Plaintiffs is the financing from the

litigation funder.  (E.g., Compl. ¶ 65.)  Plaintiffs allege that these funds were illegally and fraudulently used to litigate the validity of the PPA but, for the reasons explained above, these allegations are not only frivolous but also barred by Kim.  884 F.3d at 104 ("[A]llegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act.").

Conspiracy to Violate RICO (18 U.S.C. § 1962(d))

Count Two alleges a conspiracy to violate RICO under 18 U.S.C. section 1962(d). This claim fails for the same reasons Plaintiffs' claims fail under section 1962(c).  See Williams v. Affinion Grp., LLC, 889 F.3d 116, 126 (2d Cir. 2018) ("The alleged conspiracy involved an agreement to commit the same substantive RICO violations we have deemed insufficiently pled, and the plaintiffs have not alleged any further acts that, if carried out, would have satisfied RICO's requirement of a pattern of racketeering.").

Count Three: Common Law Fraud

In Count Three, Plaintiffs bring a claim for common law fraud.  Plaintiffs allege that Defendants "knowingly misrepresented, omitted, and/or concealed material facts in their pleadings and representations before the ICC and the ICC Tribunal respecting whether a contract at all existed between SENELEC and Liberty-CITIC."  (Compl. ¶ 160.)  This claim fails because, as explained above, Plaintiffs fail to meet the heightened pleading requirements of Rule 9(b).  Plaintiffs do not identify the allegedly false and misleading statements or testimony submitted to the International Court of Arbitration.  (See id. ¶¶ 84-94, 99-102.)

To the extent Plaintiffs allege fraud in connection with Defendants' alleged lies to them (as opposed to the International Court of Arbitration) about the validity of the PPA,[11] that claim fails because their pleading generally falls short of the requirements of Rule 9(b) and because any non-conclusory allegations that might pass the Rule 9(b) threshold are simply implausible.  <u>Supra</u> p. 15.

<u>Count Four: Violation of New York Judiciary Law Section 487</u>

In Count Four, Plaintiffs allege "an intentional pattern of collusion, wrongdoing, and deceit with the intent to deceive plaintiffs, the ICC, the ICC Tribunal, and the Senegalese Courts,"[12] in violation of New York Judiciary Law section 487.  (Compl. ¶ 169.)  This claim fails because, as explained above, "the statute [New York Judiciary law section 487] does not apply to conduct outside New York's territorial borders."  <u>Doscher</u>, 48 N.Y.S.3d at 593.

<u>Count Five: Civil Conspiracy</u>

In Count Five, Plaintiffs purport to bring a claim of "civil conspiracy."  This claim fails.  As a standalone cause of action, Plaintiffs' claim fails because "New York does not recognize an independent cause of action for civil conspiracy."  <u>Kovkov v. Law Firm of Dayrel Sewell, PLLC</u>, 119 N.Y.S.3d 849, 849 (App. Div., 1st Dep't 2020).  Civil conspiracy "may only be asserted to connect actions of separate defendants to an underlying tort."  <u>Id.</u>; <u>see also</u> <u>Marino v. Grupo Mundial Tenedora, S.A.</u>, 810 F. Supp. 2d 601, 610 (S.D.N.Y. 2011) (describing civil conspiracy as "a theory under which a party can establish the vicarious liability of co-conspirators for each others' offenses").  As a theory of vicarious liability, Plaintiffs' claim

---

[11]    It is doubtful that such a claim is even properly pleaded under Rule 8.  (<u>See</u> Compl. ¶¶ 159-66 (failing to mention such a theory in Count Three).)

[12]    The Complaint does not describe any proceedings in Senegal.  (<u>See</u> Compl. ¶¶ 127, 145, 149, 157, 169-70.)

fails because Plaintiffs fail to establish any underlying tort.  See JPMorgan Chase Bank, N.A. v. 29-33 Ninth Ave., LLC, 710 F. Supp. 3d 259, 279 (S.D.N.Y. 2024).

Count Six: Unjust Enrichment

Count Six is a claim for unjust enrichment, which requires Plaintiffs to allege that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."  Mueller v. Michael Janssen Gallery Pte. Ltd., 225 F. Supp. 3d 201, 207 (S.D.N.Y. 2016).  Plaintiffs' claim fails because they proffer no factual allegation that Defendants were unjustly enriched at Plaintiffs' expense.  Plaintiffs do not allege that they paid Boies Schiller for its representation, which was on contingency.  (Compl. ¶ 64.)  Rather, a third-party litigation funder financed the litigation.  (Id. ¶ 66.)  Dentons was paid under the Cooperation Agreement but, again, those expenses were allegedly paid by the litigation funder.  (Id. ¶ 59.)  Finally, Plaintiffs do not even allege that they paid the costs imposed by the arbitral tribunal.  (Id. ¶ 104; docket entry no. 52-3 at 2.)  Accordingly, Plaintiffs' claim fails because they do not identify any unjust payment that they made to either Dentons or Boies Schiller.  See Mueller, 225 F. Supp. 3d at 209 ("[A] plaintiff cannot recover under an unjust enrichment theory where the plaintiff did not pay the fees in question.").

Plaintiffs' unjust enrichment claim is also time-barred.  At the very latest, Plaintiffs claim accrued on May 4, 2020, the date of the International Court of Arbitration's ruling.  (Compl. ¶ 103.)  Plaintiffs filed their Complaint on March 26, 2024, which is outside of New York's three-year statute of limitations for unjust enrichment claims seeking monetary relief.  See Matana v. Merkin, 957 F. Supp. 2d 473, 494 (S.D.N.Y. 2013); City of Almaty v. Sater, 503 F. Supp. 3d 51, 65 (S.D.N.Y. 2020).

Dismissal with Prejudice Is Warranted

Finally, Defendants ask the Court to dismiss Plaintiffs' Complaint with prejudice. Where the "flaws in the pleading are incurable," "[d]ismissal with prejudice is appropriate." Diaz-Roa v. Hermes L., P.C., No. 24-CV-2105-LJL, 2024 WL 4866450, at *42 (S.D.N.Y. Nov. 21, 2024) (citation omitted). That standard is met here.

There is no indication that Plaintiffs "could—or would—provide additional allegations that might lead to a different result." Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011). Indeed, in their opposition brief to Defendants' motions, Plaintiffs made no attempt to address Defendants' arguments or even try to save their claims. (See generally Pls. Mem.) The entirety of Plaintiffs' legal argument totals five pages—one fewer than the number of counts brought[13]—and consists of nothing more than conclusory recitations of the most basic elements of each claim, long string citations to similarly conclusory paragraphs of the Complaint, and references to case law without any further discussion or elaboration.[14] Plaintiffs, who are represented by counsel, have made no attempt to engage meaningfully with the issues in this action, and should not be given any further opportunity to do so. See Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A., 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) ("A party may be deemed to concede an argument by failing to address it in an opposition brief."); Jackson v. Fed. Express, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are

---

[13]    An undercount to be sure, as Plaintiffs' RICO claim alleges eight predicate acts of "racketeering activity."

[14]    The factual background portion of Plaintiffs' brief is no better, as it is almost entirely a carbon copy of Plaintiffs' Complaint—even down to the paragraph formatting. (See Pls. Mem. at 5-16.)

not defended have been abandoned.").  In light of the foregoing, there is no indication that an amendment of Plaintiffs' Complaint would be anything but futile, and Plaintiffs' Complaint is dismissed with prejudice.

<u>CONCLUSION</u>

For the foregoing reasons, the Dentons Defendant's motion to dismiss is granted and Boies Schiller's motion to dismiss is granted.  This Memorandum Order resolves docket entry nos. 50 and 54.  The Clerk of Court is respectfully directed to enter judgment dismissing the Complaint in its entirety with prejudice, and to close this case.

SO ORDERED.

Dated: New York, New York
        September 30, 2025

                             /s/ Laura Taylor Swain
                             LAURA TAYLOR SWAIN
                             Chief United States District Judge